PER CURIAM:
Claimant brought this action for damage to his vehicle which occurred when he was operating his 1999 GMC Jimmy northbound on Interstate 79 near Fairmont in Marion County, and it struck a hole located on a bridge. Respondent was responsible at all times herein for the maintenance of Interstate 79 in Marion County. The Court is of the opinion to deny this claim for the reasons set forth more folly below.
The incident giving rise to this claim occurred on August 21, 2002, at approximately 5:00 p.m. Claimant was traveling northbound on 1-79 proceeding to Fairmont. Interstate 79 is a foui-lane, divided highway with two southbound lanes and two northbound lanes. There was some confusion at the hearing of this matter as to which of two bridges on 1-79 that tins incident occurred. The evidence established that the first bridge is located onI-79 northbound at the Harrison/Marion County line, and the second bridge is located approximately seven tenths of a mile north of the county line and closer to Fairmont. Both bridges at issue have two northbound lanes of travel, hi addition, each bridge has an asphalt surface, a white center line, a yellow edge line for the left lane, and a white edge line for the right lane. On the date at issue, the weather was clear with no precipitation and the road was dry. Claimant was proceeding northbound on 1-79 at approximately seventy miles per hour in “very heavy traffic.” As he traveled across one of the two bridges, hi s vehicle struck a hole in the road. Claimant stated that the impact felt as though the front end “almost dropped out of the vehicle.” However, claimant is not sure whether the hole was located on the first bridge at the Marion/Harrison County line or at the second bridge near Fairmont, He stated that the hole was located where the bridge and the pavement of the highway meet. He was not sure whether the hole was at the entrance to the bridge or at the exit of the bridge. After the incident, claimant was able to drive to Fairmont and return back home to Clarksburg that evening without any noticeable problems with the vehicle; however, he testified that two days la ter when he drove the vehicle from Clarksburg to Morgantown, he noticed the vehicle was out of alignment. He stated that the vehicle’s steering was not correct and that it “darted back and forth” on the road. Claimant testified that he had to take his vehicle to at least two different repair shops to have the front end realigned correctly. In addition, an idler arm had to be replaced and the rotor assembly in the front left wheel had to be repaired. While claimant stated that he was seeking an award of $421.83 in his notice of claim, he submitted repair bills at the hearing of this matter in the total amount of $581.80. However, claimant had insurance coverage that would have covered this particular loss. At the hearing, claimant testified that he believed the deductible feature was $500.00. However, the Court requested that claimant provide a copy of his abstract of automobile *111 insurance coverage to the Court and respondent. The abstract of insurance coverage indicates that his deductible feature at the time of this incident was $250.00. Thus, claimant is limited to a recovery of $250.00 in the event of an award. See; Sommerville/State Farm Fire and Casualty v. Division of Highways, 18 Ct. Cl. 110 (1991).
Claimant contends that respondent knew or should have known that this hole was present and that it presented a hazardous condition to the traveling public.
Respondent asserts that it did not have notice of any holes on either of the two bridges at issue, and that it has reasonably and diligently maintained both bridges.
Gary Dyer, the Maintenance Supervisor for respondent at its Lost Creek Maintenance Garage at the time of this incident, is responsible for overseeing all maintenance on 1-79 north from the ninety-nine mile post marker at Weston to the one-hundred thirty two mile post marker at South Fairmont. Thus, he is responsible for overseeing the maintenance of both bridges at issue in this claim. Mr. Dyer testified that on June 28, 2002, he was on duty and traveling northbound on 1-79 when he noticed a hole in the pavement on the “130 bridge” northbound, which is the second bridge referred to by claimant in his testimony. This bridge is approximately seven tenths of a mile north of the county line. He stated that he applied a temporary patch on the hole at that time, and then on July 2, 2002, he and his crew returned to apply a permanent patch on the hole. Respondent introduced two DOT-12 daily work reports which corroborate Mr. Dyer’s testimony that this hole on the “130 bridge” was patched. Further, Mr. Dyer stated that he did not have any information regarding holes on either bridge at issue once these repairs were made.
Robert Suan, Crew Leader for respondent at the same Lost Creek Maintenance Garage oversees the maintenance for 1-79 north including the “130 bridge” northbound. Mr. Suan testified that he and Paul Lister, an investigator for respondent’s Legal Division, met with claimant on May 8,2003, at the “130 bridge” northbound. He stated that at that time claimant informed him that it was on the “130 bridge” northbound that his vehicle had struck the hole. In addition, Mr. Suan testified that claimant indicated to him and Paul Lister that the incident at issue occurred at the same location of the patched hole that Mr. Dyer and his crew had repaired on July 2, 2002. Mr. Lister also testified that claimant was very clear in indicating to him that this incident occurred on the “second bridge”, also referred to as the “130 bridge”, and that it occurred at the location of the patch applied by Mr. Dyer and his crew. Finally, Mr. Lister testified that respondent did not have any other complaints regarding this patched hole either before or after claimant’s incident.
It is a well established principle that the State is neither an insurer nor a guarantor of the safety of motorists on its roads and highways. Adkins v. Sims, 46 S.E.2d 81 (W.Va. 1947). To hold respondent liable, claimant must establish by a preponderance of the evidence that the respondent had actual or constructive notice of the road defect at issue and a reasonable amount of time to take corrective action. Chapman v. Dept. of Highways, 16 Ct. Cl. 103 (1986); Pritt v. Dept. of Highways, 16 Ct. Cl. 8 (1985).
In the present claim, the Court is of the opinion that claimant failed to establish any negligence on behalf of respondent. The evidence adduced at the hearing established that respondent had made repairs to the hole which claimant allegedly struck just a little over a month prior to the alleged incident. Further, respondent did not have any other complaints or notice regarding this hole prior to the alleged incident. The Court is of the opinion that respondent was acting diligently in maintaining the bridge at issue on 1-79 and there is insufficient evidence of negligence on the part of respondent.
*112 Therefore, in view of the foregoing, the Court is of the opinion to and does deny this claim.
Claim disallowed.